## Commonwealth ex rel. Arrott Steam Power Mills Co. *v.* Hon. Michael Arnold.

*Practice—Bills of exceptions—Duty of judge—Constitution—Statute of Westminster 2d—Acts of Feb. 24, 1806, and May 24, 1887.*

The statute of Westminster 2d has not been repealed, nor has it become obsolete. Bills of exception, though their form has been somewhat changed in practice, fill the same place in regard to trials they always have ; and for putting on the record matters of evidence, of the competency of witnesses, etc., they are still the only way known to the law.

The acts of Feb. 24, 1806, 4 Sm. L. 270, and May 24, 1887, P. L. 199, have not relieved the trial judge of the duty of examining the bill of exception and the charge filed of record, and of certifying them by his own proper signature. This is a personal duty of the judge which cannot

constitutionally be delegated by him, or transferred by the legislature to any subordinate. Chase v. Vandegrift, 88 Pa. 217, explained.

Where the judge has certified and filed of record in his court the transcript of the evidence, showing the exceptions and the charge, he is not under any obligation to sign a second or separate bill, marking certain parts of the charge as specifically excepted to, by inclosing them in brackets, or by similar device, though it is good practice to do so.

Argued Dec. 30, 1893. Rule to show cause why special . writ under statute of Westminster 2d should not issue to Hon. Michael Arnold, directing him to seal bill of exceptions. Before STERRETT, C. J., GREEN, WILLIAMS, MCCOLLUM, MITCHELL, DEAN and THOMPSON, JJ. Rule discharged.

The petition of the Arrott Steam Power Mills Co. represented as follows :

" That they were impleaded by John Williams, the plaintiff in the above case, of a certain alleged cause of action in the Court of Common Pleas No. 4 of the county of Philadelphia, of March Term, 1893, No. 152, and issue having been joined thereon, the said cause came on for trial before his honor the Honorable Michael Arnold, one of the judges of the said court, and before a jury duly impaneled, on November 15, 1893, and said trial continued until Friday, November 17, 1893, during which trial stenographic notes of the testimony and charge of the court were taken by E. Z. Brailey, official stenographer of the said court; and at the close of the charge as made, and before the jury had retired, the counsel for the defendant, your petitioner, asked the court for and did obtain exceptions to the refusal of the learned court to charge as requested in certain points for instructions presented by the defendant, and leave was then granted by the learned court to take exception to the whole or any part of the said charge so just made :

" That the said official stenographer did note the several exceptions as asked to the refusal of the learned court of the defendant's several points, and 'also because in the refusal of the eleventh and twelfth points of defendants, the learned court stated that he saw no concurrent negligence in the plaintiff;' but refused to note an exception to the specific language used by the learned judge in answering the said eleventh and twelfth points, which was as follows :

"' There is no evidence in this case whatever to charge the

plaintiff company with what is called contributory or concurrent negligence. In other words the plaintiff company is not in my judgment in any wise in fault in this case. The only question is whether the defendants are in fault or not.'

"That, on Saturday, November 25, 1893, the counsel for your petitioner presented to his honor, the Hon. Michael Arnold, the bill of exceptions prepared by them in the usual form, consisting of the record of the trial of the cause and charge of the learned judge as prepared·by the official stenographer, whereto he had attached his official certificate, as follows: 'I, E. Z. Brailey, official stenographer of the Court of Common Pleas No. 4, room H, of Philadelphia county, do hereby certify that the foregoing is a true and correct transcript of the testimony, charge of the court, and exceptions allowed by the judge in the above cause ; that this transcript is made and filed by order of said court; that the charge of the court has been approved by the judge who delivered the same ; and that the interlineations were made by me and marked with my initials. E. Z. Brailey, official stenographer, C. P. No. 4, room H ; ' but, on which the said stenographer had refused to mark with brackets the portion of the charge of the learned judge just above referred to, to which exception was taken in accordance with the leave granted by the learned judge as above stated, before the jury retired for deliberation. Thereupon the learned judge declined to mark the said bill of exceptions as 'presented' (though the twelfth rule of the rules of the court of common pleas relating to bills of exceptions in the 33d section provides, 'In every case where a bill of exception is tendered, the same shall be prepared in form and presented to the judge within ten days after the verdict'), and stated that he did not and would not mark any bill of exceptions as 'presented,' nor settle, sign and seal the same at any time.

"And that the said bill so prepared was, on November 28, 1893, submitted to the learned counsel for the plaintiffs, with the suggestion that the said bill differed from the transcript of the report of the trial made by the official stenographer, and certified to and filed by him in accordance with the order of the court, only in the objection and exception noted to the judge's specific language in answering the eleventh and twelfth points as aforesaid, and, with the request that they would 'ex-

amine the same and mark it as agreed to, so as to avoid all possible questions that may arise hereafter,' which bill of exceptions so prepared was returned by the said learned counsel on or about December 1, 1893, with the suggestion from them that they would prefer to have the variation from the copy as filed settled by the learned judge.

" That upon several other occasions both before and after the submission of the said bill of exceptions to the learned counsel of the plaintiff, his honor, the Hon. Michael Arnold, positively declined to sign or seal the bill of exceptions, or in any way to examine the same or settle the terms of any part of it, stating that the transcript, as filed by the official stenographer with his certificate thereon as above stated, was all that was required and that no further action on his part was necessary, and did, on December 13, 1893, refuse to consider, settle, sign or seal the said bill of exceptions.

" That it is provided in the said twelfth rule of the said court in section 35 : ' In every case of a bill of exceptions, it shall be the duty of the party presenting the same within twenty days thereafter, to have the same settled by the judge before whom the case was tried, on forty-eight hours' notice, with a copy of the bill served on the opposite party ; ' and that the twenty days, after the ten days after the verdict was rendered, will expire on Sunday, December 17, 1893.

" Wherefore your petitioners pray that this honorable court do award a writ conformably to the statute in such case made and provided, directed to the Hon. Michael Arnold, commanding him," etc.

Respondent filed an answer in which he averred :

" 1st. That the Court of Common Pleas No. 4, of the county of Philadelphia, of which I am one of the judges, on March 7, 1891, appointed Edward Z. Brailey one of the official stenographers of said court, in pursuance of the mandate of the act of May 24, 1887, P. L. 199.   The said Edward Z. Brailey thereupon took an oath of office, and a minute of his appointment and oath appear of record therein.   On the ninth day of January, 1892, the said court ordered the official stenographers of the court to file a long-hand typewritten report of each case reported by them, unless otherwise ordered by the court.

" 2d. It is true that, on Wednesday, November 15, 1893, the

case of the John Williams Manufacturing Company v. The
Arrott Steam Power Mills Company, Common Pleas No. 4,
March term, 1893, No. 152, came on for trial before myself
and a jury duly impaneled and sworn or affirmed, and the
trial was continued from day to day until Friday, November 17,
1893, when a verdict was found for the plaintiff.   During the
trial, the defendant tendered an exception which I duly allowed,
and directed the official stenographer to note, which was done
by him, and full stenographic notes of the testimony and ex-
ceptions to rulings thereon allowed by me, and the charge which
I delivered to the jury, were taken by said Edward Z. Brailey,
the official stenographer aforesaid, and a typewritten copy there-
of was duly made and filed among the records of said court.

"3d. It is true that, at the conclusion of my charge, the de-
fendant, by its counsel, tendered exceptions to certain parts of
my charge, and requested leave to put brackets around the
same when it should have been duly transcribed.

"4th. It is also true that I declined to allow exceptions to be
noted to said charge, but informed the defendant's counsel that
he was at liberty to except to any part of said charge on his
appeal to the Supreme Court, as authorized by the decision of
your Honorable Court in the case of Janney v. Howard, 150
Pa. 339.   The day following the rendition of the verdict, a
copy of my charge was presented to me by the official stenog-
rapher aforesaid, and was by me examined, approved and di-
rected to be filed among the records of the court.   A transcript
of the testimony and exceptions to my rulings were, as before
stated, filed at the same time in obedience to the order of the
court made January 9, 1892, before referred to, and a certifi-
cate of the official character thereof was added to said tran-
script by the official stenographer aforesaid.   A copy of said
certificate appears in the affidavit filed in support of the present
rule.

"5th. It is also true that subsequently, that is within ten
days from the rendition of the verdict, the defendant's counsel
presented to me a copy of the testimony and charge, with a
request that I should mark the same presented, and within
twenty days requested me to sign my name at the end thereof,
which I declined to do, for the reason that the testimony, excep-
tions and charge already appeared of record in said cause, and

that such additional copy was not only superfluous and unnecessary, but that it unduly burdened the record with a duplicate of what was already in it.

" My action in this respect was not intended to deprive the defendant of any legal right to which it is entitled, for I then stated to defendant's counsel that, if your Honorable Court should be of opinion that I should sign a duplicate copy of the testimony, exceptions and charge already in the record, I would do so willingly and cheerfully ; but that I refused to do so because, according to the decisions of your Honorable Court, it is no longer necessary that it should be done.

" I submit myself to the direction of your Honorable Court, with entire respect and willingness to obey any orders that your honors may make in the premises."

*S. Davis Page*, for petitioner.—It was the duty of the trial judge to sign the bill of exceptions presented to him: Statute of Westminster, 13 Edw. 1, c. 31; Roberts's Dig. *93; Alexander v. Weidner, 82 Pa. 454; Drexel v. Man, 6 W. & S. 396, note; Janney v. Howard, 150 Pa. 343; Fries v. Null, 154 Pa. 581; Blake v. Metzgar, 150 Pa. 300; Bondz v. Penna. Co., 138 Pa. 153; Miller v. Hershey, 59 Pa. 64; Anderson v. Oliver, 138 Pa. 156; Finch v. Conrade, 154 Pa. 329; Connell v. O'Neil, 154 Pa. 585; Taylor v. Preston, 79 Pa. 436; Chase v. Vandegrift, 88 Pa. 217; Rosenthal v. Ehrlicher, 154 Pa. 403; Reichenbach v. Ruddach, 121 Pa. 29; Acts of May 8, 1876, P. L. 140; May 24, 1887, P. L. 199, §§ 3, 5; Homer v. Com., 106 Pa. 226; Hendrix's Account, 146 Pa. 289; Sifred v. Com., 104 Pa. 179; Supreme Court of Judicature Act of 1873, 36 and 37 Vict., c. 66, Schedule Rules of Procedure, §§ 49, 50, 54, 55; Kirkpatrick v. Lex, 49 Pa. 122; Thomas v. Wright, 9 S. & R. 91.

*S. P. Wolverton* and *George W. Biddle*, for respondent.—The Statute of Westminster, 13 Edw. 1, cap. 31 (1285), is still in force and has not become obsolete. The changes which have taken place are in the manner of bringing the exceptions on the record. They cited: Stewart v. Bank, 11 S. & R. 267; R. R. v. Berry, 68 Pa. 279; Act of May 15, 1874, P. L. 182; Act of May 8, 1876, P. L. 140; Act of May 24, 1887, P. L.

199; Chase v. Vandegrift, 88 Pa. 217; Rosenthal v. Ehrlicher, 154 Pa. 396; Connell v. O'Neil, 154 Pa. 582; Janney v. Howard, 150 Pa. 339; Fries v. Null, 154 Pa. 573; Grugan v. Phila., 158 Pa. 337; Downing v. Baldwin, 1 S. & R. 298; Wheeler v. Winn, 53 Pa. 122, and an article entitled "Bills of Exceptions," 31 W. N. 288.

OPINION BY MR. JUSTICE MITCHELL, March 5, 1894:

The statute of Westminster has not been repealed, nor has it become obsolete. Bills of exception, even in the old form as established by it, may fill the same place in regard to trials that they always have, and to those who prefer accuracy to rapidity, even at the expense of some time and labor, they are still deserving of use and will receive recognition by this court. Changes of practice however have become necessary to accommodate the requirements of the statute to modern ways. In this there is nothing unprecedented. The statute contemplated the making up of the complete bill when the exception was taken, at the trial; but nearly two hundred years ago this practice had been modified, and it was held in Wright v. Sharp, Salkeld, 288, that the bill need not be drawn up in form until a reasonable time after the trial. See also Buller's Nisi Prius, 316. And such has always been understood as the practice in this state. Morris v. Buckley, 8 S. & R. 211; Stewart v. Huntingdon Bank, 11 S. & R. 267.

The more recent changes in practice consequent upon the introduction of stenographers under the statutes making them officers of court, have been fully set forth in Rosenthal v. Ehrlicher, 154 Pa. 396, and Connell v. O'Neil, Id. 582. In the latter case the distinction established by the recent statutes between exceptions to evidence etc. and exceptions to the charge, and the true limits of the decision in Janney v. Howard, 150 Pa. 339, were definitely pointed out. The generality of the language used in Janney v. Howard had led to much misapprehension in the professional mind as to the requirement of bills of exception in regard to evidence and other matters at the trial, and even as to the charge. These erroneous views were corrected in Rosenthal v. Ehrlicher and Connell v. O'Neil, in which it was held that the record must show affirmatively that the charge was filed by direction of the judge, and without such

affirmative showing no act of the stenographer in filing his notes etc. could supply the place of a bill of exceptions.    In the last two cases however it was said, in deference to Chase v. Vandegrift, 88 Pa. 217, that if the judge's direction to file the notes distinctly appeared, he need not personally sign the bill of exceptions or the notes of his charge.

The judge is the constitutional head of his court, and no labor saving device can relieve him from the duties of that office, among which is that of seeing and certifying that the record is absolute verity according to the facts as they actually took place.    The statute of Westminster of course contemplated the actual sealing of the bill with the judge's own seal, which he was subsequently called upon to acknowledge or deny, unless the bill was tacked to the record and came up with it, in which case the seal was assumed to be that of the judge.    Buller's Nisi Prius, 316 ; Withers v. Gillespy, 7 S. & R. 15.    With the changes of custom and the diffusion of education, the written signature has in practice taken the place of the seal, as the important element of the certification.    The act of February 24, 1806, was the first statutory change that opened the entire charge to exceptions though not taken at the trial, but even under this act it was the judge himself who reduced his charge to writing and put it on the record.    In Bassler v. Niesly, 1 S. & R. 431, Chief Justice TILGHMAN said, referring to the practice under this act, " that a judge should write his own opinion is proper," but he was not obliged to make a transcript of the evidence.    When the act of May 24, 1887, P. L. 199, required the stenographer to take notes of the charge and file them of record, and put the charge, thus filed, on the same footing as a charge filed under the act of 1806, it did not intend, nor could it, even if intended, dispense with the necessity of the judge's personal examination and certification of the correctness of the notes filed.    The charge is his charge and the filing is his act, and the statute of Westminster, still in force, the act of 1806 and the act of 1887 alike require that he should do it in person and certify his so doing by his own signature.    This saves all dispute, and shows conclusively the performance of his duty.

This view is not new, nor is it a departure from settled practice.    In Taylor v. Preston, 79 Pa. 436, the judge below had refused to correct the stenographer's notes on the ground that

the statute had made them the official and best authority, but this court held that he not only might but should do so, and WOODWARD, J., said, " The administration of the law has been committed to the courts by the constitution, and the same constitution has provided that judges, and not clerks, shall compose those courts. Responsibility for the conduct of legal business must rest where it has been constitutionally lodged. The legislature would have no power, as they could have had no intention, to impose upon the clerk, who records the details of the trial, the duties of the judge who tries the cause." This language was used with reference to the duty of the judge to make personal examination of the notes to be filed under the stenographer's act of 1874, but we are of opinion that it is equally applicable to the subsequent acts on the same subject, and that under the law as it is now, the duty to examine the exceptions when they are merely noted by the stenographer, and the charge filed of record, and to certify them by his own proper signature, is a personal duty of the judge which cannot constitutionally be delegated by him or transferred by the legislature to any subordinate.

In Chase v. Vandegrift, 88 Pa. 217, it was held that the judge need not sign the bills of exceptions, but the case did not intend to decide that the judge himself was relieved from the necessity of personal supervision and certification, nor could we under the constitution have so held. The decision in that case must not be carried beyond what was intended to be decided by it, which as read by a majority of my colleagues is only that the judge need not duplicate by formal bills of exceptions the notes of the stenographer and formally affix his seal to the bills. So understood, it is going beyond the scope of that decision, to claim that it is no longer necessary for the judge to examine and certify the verity of the stenographer's notes. We are not disposed to stand on mere forms. That the record is true and the judge so declares, is the substance, the form is not very material. He may so declare by formal bills with his seal, or he may adopt the notes of the stenographer as verity, and so declare by his certificate at the end of the stenographic report certifying to its correctness as a whole. If he chooses to multiply his certificates by affixing one with his seal appended to every exception to the admission or re-

jection of evidence, that certainly will not affect the verity of the record. But the distinct assent of the judicial mind to the truth of that part of the record made up by the stenographer must appear of record, by the certificate of the judge under his own hand. He may make as many certificates as he pleases, but he must make at least one which discloses his belief that the stenographic notes are verity and that he so declares.

The necessity for such supervision is demonstrated by the present case. We have before us two copies of the charge, one furnished to counsel by the stenographer under the provisions of the statute, and the other filed in the court below and sent up with the record. Both are certified by the stenographer in exactly the same terms, yet they do not agree and the certificate that " the charge of the court has been approved by the judge who delivered the same ; and that the interlineations were made by me, and marked with my initials," is plainly incorrect as to both. In the first type written copy there are more than forty corrections and additions in manuscript, not a single one of which is attested by initials, and most if not all of which are in the handwriting of the judge and not of the stenographer as the certificate incorrectly sets forth. The second copy is manifestly re-type written with greatly increased care, but even it fails to observe more than twenty of the judge's corrections in the first. Most of them it is true are what may be called printer's errors which do not seriously affect the sense, but some of them, such as " that damage being *incurred* by the water in the mill having become let loose, and running over the machinery," for " being *increased* by the water," etc., or " the items of damage, the rebuilding of the roof and floors," instead of " the rebuilding of the *wall*, roof and floors," etc. may be material. Should they become so how are we to know which is correct? The stenographer's certificate is that both are correct, which is impossible ; and if we are to be guided by the fact of the judge's handwriting, it is the copy filed of record and sent up on the certiorari, that is wrong. It is plain that the judge did personally examine one of the copies, and correct it. If he had then put his name to it he would have ended all doubt or question on the matter. In making this detailed criticism we desire only to say that the art of stenography is not yet perfect and to illustrate the tendency of mere-

ly clerical certificates to become formal and perfunctory, and the necessity that the judge should perform this duty in person under the responsibility of his office. The officer of the court below is well known to the profession as an intelligent, competent and experienced stenographer, but even his notes have not escaped the necessity of personal examination and correction by the judge.

Upon the general question therefore we are of opinion that the stenographer's notes of evidence, exceptions, and the charge when filed of record, should be certified by the signature of the judge, and have no doubt the practice thus indicated will be conformed to by the learned judge below without any necessity for further action on our part. The petition in the present case however goes a step farther, and seeks to have the judge mark certain parts of the charge as specifically excepted to, by inclosing them in brackets or similar device. This was the correct practice formerly, to show the exceptions when they were required to be made specifically in the court below at the time of the trial. But since the change introduced by the recent acts making the whole charge when filed by the judge open to the assignment of errors, that practice though still convenient and commendable is not obligatory, and the judge below is entitled to use his own discretion about it. Nor is the judge after having certified and filed of record in his court the transcript of the evidence showing the exceptions, and the charge, under any obligation to sign a second or separate bill for the party. The purposes which these things formerly served are no longer necessary, having been supplied or rendered superfluous by the recent statutory changes. As these are practically the only matters of relief sought by the petition in the present case, the rule must be discharged.